CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 JAN 23  PM 4: 51

DEPUTY CLERK___D-A—

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JIMMY DIAZ, PRO SE, | § | |
| TDCJ-CID No. 1737301, | § | |
| Previous TDCJ-CID No. 475593, | § | |
| Previous TDCJ-CID No. 721195, | § | |
| Previous TDCJ-CID No. 1201534, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:13-CV-0080 |
| | § | |
| C. McDUFFIE, Warden, and D. NASH, Major, | § | |
| BRAD LIVINGSTON, and RALPH BATES, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff JIMMY DIAZ, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants and has been granted leave to proceed in forma pauperis pursuant to Title 28, United States Code, section 1915.

By his July 25, 2013 Amended Complaint, plaintiff asserts an Eighth Amendment failure to protect claim against defendants McDUFFIE and NASH. In that Amended Complaint, plaintiff included defendants LIVINGSTON and BATES, claiming they are liable on a theory of respondeat superior.

By an attachment to his Amended Complaint, plaintiff complains his TDCJ file was inadequate in that it contained serious errors and omissions which led to his transfer to the Neal Unit on January 30, 2012. Plaintiff alleges that while he was at the Neal Unit a law library

official labeled him a snitch and further alleges inmate Albert Ramerz [sic] extorted him for money.  Plaintiff also alleges an inmate Rodriquz [sic] was told by law library staff that plaintiff was the person submitting sick calls in Rodriquz' name and causing a lot of problems.

Plaintiff requests $1,000.00 in compensatory and $1,000.00 in punitive damages from each defendant, as well as costs and the filing fee.  By his handprinted "amended complaint" attached to the July 25, 2013 amended complaint form, plaintiff requests compensatory damages of $1,000,000.00 and punitive damages of $100,000.00 from each defendant, jointly and severally; and costs.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2).  The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions.  42 U.S.C. 1997e(c)(1).  A *Spears* hearing need not be conducted for every *pro se* complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged

---

[1]A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see, Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2]*Cf, Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing.  A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

by plaintiff in his complaint to determine if his claims present grounds for dismissal or should proceed to answer by defendants.

## SPEARS HEARING

In order to obtain more specificity about plaintiff's allegations and to allow him to flesh-out his claims with more facts, the Court conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) on October 16, 2013.

At the hearing, plaintiff appeared. Two officials from TDCJ-CID also appeared, Cindy Harrell, Regional Grievance Director, and Dr. Benjamin Leeah, Regional Health Care Director for TDCJ. All three were sworn, and testimony was received.

Plaintiff testified he was previously incarcerated which ended with his discharge from prison in 2006. He stated he was returned to TDCJ in 2011 and was assigned to the Holliday Unit, but on October 3, 2011, he was assaulted and subsequently was transferred to the Neal Unit for his safety. Plaintiff said he arrived at the Neal Unit on January 30, 2012. Plaintiff agreed with the notation in his Offender Protection Investigation records that, upon arrival at the Neal Unit, he informed an Officer Crandall at his intake interview (incoming Chain interview) and a sociologist about a 2005 incident at the Neal Unit in which he stabbed a Tango Blast gang member called "2 star general." Plaintiff requested an immediate unit transfer, but instead was instructed to report it to prison officials if he saw "2 star general."

Plaintiff stated that, when he went before the Unit Classification Committee (UCC), he told them what had happened at the Holliday Unit and said he was afraid to be at the Neal Unit.

The Magistrate Judge reviewed plaintiff's Offender Protection Investigation (OPI) files in open court. The first report shown in plaintiff's TDCJ files concerns plaintiff's report of a

February 19, 2012 threat by unknown members of the Tango threat group. Plaintiff was placed in transient status pending the OPI investigation. There were no witnesses to the incident, and plaintiff could provide no further details. The investigation result was forwarded to the Unit Classification Committee and the UCC concluded plaintiff was basing his complaint on the 2005 incident which was during his prior incarceration. The UCC determined plaintiff should remain in current status.

Plaintiff stated that, on November 10, 2012, inmate Del Toro told plaintiff he had found out plaintiff was a snitch and he hit plaintiff. Plaintiff said he reported this over the intercom. Plaintiff said he submitted an I-60 to Ms. Ponder before the incident saying he was having trouble with gangmembers in 5 Building and something was going to happen. He stated he named no names and did not specifically mention Del Toro.

After the November 10, 2012 attack, plaintiff was placed in transit status pending an OPI investigation. The Court noted the OPI investigation showed both the investigating officer and an inmate witness each stated plaintiff said that he was attacked when he asked Del Toro to give him a couple of soups in exchange for plaintiff's having done Del Toro's laundry. Moreover, Del Toro's own account supported this version of events. Plaintiff received a disciplinary case for conducting an unauthorized business and Del Toro was given a disciplinary case for assaulting plaintiff.

Plaintiff's testimony at the *Spears* hearing was that he (plaintiff) denied he had ever said he had requested commissary from Del Toro. Instead, plaintiff stated he had only put Del Toro's laundry in front of his fan to dry it. He said Del Toro then offered him two soups but he responded he didn't want them, triggering the assault.

The Court notes that, if plaintiff was hit by Del Toro because he requested payment for laundry services or if he was hit because Del Toro thought he was a snitch is not a matter which must be decided. The relevant fact is that the OPI investigation revealed a basis for concluding plaintiff had been assaulted for a reason other than any continuous threat from multiple gangs, as he had complained. Therefore, prison officials' decision to move plaintiff away from inmate Del Toro would be a reasonable step to protect plaintiff in the future.

Based upon the results of the OPI investigation, the UCC determined plaintiff's report of assault by Del Toro was substantiated and recommended a housing change, so plaintiff and Del Toro would not be in contact with each other.

On November 28, 2012, plaintiff complained that his cellmate's boyfriend had pushed him and threatened to stab him in the eye if he ever "messed" with the cellmate. Plaintiff said the boyfriend was accompanied by inmates who were members of the Crips and the Tango gangs. Again, plaintiff was placed in transit and the incident was investigated. Based upon the results of that investigation, the UCC found the evidence was insufficient to make a final determination that the incident had occurred and recommended no action.

Plaintiff stated he then reported he was having problems with a Tango Blast gang member and was moved to a different cell next to his old cell.

Plaintiff agreed that prison officials refused to do an OPI on reports he made which contained no new facts requiring an investigation. Plaintiff's OPI file showed such repetitive reports occurred December 5, 2012, December 10, 2012, and January 10, 2013.

Plaintiff said he was sent to the Montford Unit for scabies in January of 2013. When the Court questioned plaintiff further, plaintiff testified that actually he told "the psych lady" he

wanted treatment for his scabies and she sent plaintiff to the Montford Unit for threatening to hurt himself.  Plaintiff was released from Crisis Management and returned to the Neal Unit five days later.  Plaintiff then saw the UCC.  Plaintiff said that, upon his return from Montford, the UCC assigned him to general population, but plaintiff refused the housing assignment and received a disciplinary case.  Plaintiff was then transferred off-unit and is presently assigned to the Jester III Unit.

Plaintiff testified he sent letters to defendants LIVINGSTON and BATES, but that they did not resolve his complaints

## THE LAW AND ANALYSIS

During the Spears hearing, plaintiff stated he wished to add inmate Ramerz as a defendant because he was discovered with a homemade knife and had threatened to stab plaintiff.  The Magistrate Judge pointed out to plaintiff that he had already amended his complaint and had not named Ramerz as a defendant at that point.  The Court further notes that Ramerz was a fellow inmate and plaintiff has alleged no fact showing Ramerz was acting under color of state law.  Title 42, United States Code, section 1983 does not cover claims against purely private parties.  Therefore, plaintiff's allegations against Ramerz do not constitute a cognizable federal claim.  *See Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003); *Adickes v. Kress*, 398 U.S. 144, 149, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

Plaintiff says he is suing defendants LIVINGSTON and BATES on a theory of "respondents superiors[3]" and because he sent letters of complaint to them but they failed to satisfactorily resolve those complaints.  On his complaint form, plaintiff identifies defendant

---

[3]Plaintiff's July 25, 2013 Amended Complaint at page 3 of the complaint form.

LIVINGSTON as the Director of TDCJ and defendant BATES as the Safe Prisons Act

Chairman.  He indicates they office in Huntsville.  It appears plaintiff's claim against these two

defendants is based entirely on their supervisory positions.  The acts of subordinates, however,

trigger no individual section 1983 liability for supervisory officers.  *Champagne v. Jefferson*

*Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).  A supervisory official may be held

liable only when he is either personally involved in the acts causing the deprivation of a person's

constitutional rights, or there is a sufficient causal connection between the official's act and the

constitutional violation sought to be redressed.  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th

Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*).  Plaintiff has alleged

no fact demonstrating personal involvement by these officials and has alleged no fact showing

any causal connection between their acts or omissions and the alleged constitutional violations.

Although plaintiff says he wrote letters to these two officials in Huntsville, that fact alone would

not establish the truth of plaintiff's complaints nor would it obligate either defendant to

intervene.  Those officials are entitled to rely upon the procedures and policies TDCJ established

to address matters involving inmate safety and related issues.  Plaintiff does not contend there

were not independent procedures in place to investigate his complaints without action by these

supervisory defendants.  Consequently, plaintiff's allegations against these defendants fail to state

a claim on which relief can be granted.

The Eighth Amendment's proscription against cruel and unusual punishment requires

prison officials to protect inmates from violent attacks by other inmates.  *Farmer v. Brennan,* 511

U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  However, not every injury "suffered by

one prisoner at the hands of another ... translates into constitutional liability for prison officials

responsible for the victim's safety." *Id.* at 834, 114 S.Ct. 1970.  Liability for an Eighth

Amendment deprivation requires the same delinquency in denial of protection against harm from

other inmates as it does for denial of medical care, *Johnston v. Lucas*, 786 F.2d at 1259; thus,

there must be an allegation of facts which will support deliberate indifference on the part of

officials, *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The plaintiff

prisoner must prove: (1) he is incarcerated under conditions "posing a substantial risk  of serious

harm," and (2) that the defendant prison official's state of mind is one of "deliberate indifference"

to the prisoner's health or safety.  *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995); *Jones v.*

*Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  "[A]n official's failure to alleviate a significant

risk that he should have perceived but did not, while no cause of commendation, cannot under

our cases be condemned as infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 114

S.Ct. 1970, 1979, 128 L.Ed.2d 811, 823 (1994).  Furthermore, the mere negligent failure to

protect a prisoner from assault does not comprise a constitutional violation.  *See Davidson v.*

*Cannon,* 474 U.S. 344, 347-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Oliver v. Collins,* 914

F.2d 56, 60 (5th Cir.1990).

Plaintiff's allegations do not support the element of deliberate indifference by any one or

more of the defendants.  Plaintiff agreed that, when his reports of endangerment contained new

facts, he was placed in transit, the reports were investigated, and the UCC, which included

defendants McDUFFIE and NASH, considered the facts and then acted based upon the

information gathered and the results of those investigations.

A plausible entitlement to relief exists when the allegations in the complaint cross the

thresholds separating the "conclusory" from the "factual" and the "factually neutral" from the

"factually suggestive." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 n.5, 167 L.Ed.2d 929 (2007). To state a claim upon which relief may be granted, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Court has viewed plaintiff's allegations in the light most favorable to him and finds plaintiff has not alleged sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Stated differently, plaintiff's alleged facts and the TDCJ records produced at the hearing, the accuracy of which plaintiff has not challenged, do not show that any defendant acted with deliberate indifference to plaintiff's safety.

## CONCLUSION

In considering whether this case should proceed further, the Court has considered the fact that plaintiff suffered an injury, that is, a black eye. In fact, not only has the Court considered that injury, but if plaintiff had not suffered such injury, his claims, which were solely for monetary relief, would be subject to dismissal. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir.1999) (failure-to-protect claim that does not allege any resulting injury does not state an Eighth Amendment violation).

That injury, however, appears to have been the result of a disagreement between plaintiff and inmate Del Toro, and plaintiff has not shown it to have been the result of a failure to protect. The defendants reasonably relied upon the results of the OPI investigation and had no reason to think plaintiff was attacked for reasons of widespread multi-gang animosity, as claimed by plaintiff.

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the recommendation of the Magistrate Judge to the United States District Judge that the Civil Rights Claim filed pursuant to Title 42, United States Code, Section 1983, by plaintiff JIMMY DIAZ be DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

Plaintiff may utilize the period for filing objections in which to amend his pleadings to cure his deficient claim(s) or he may file objections to the Report and Recommendation.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>23rd</u> day of January, 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).